IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NLB CORP., § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | Civil Action No. 3:20-CV-3639-N | |
| § | | |
| BINGHAM MANUFACTURING, INC., § | | |
| § | | |
| Defendant. § | | |

## MEMORANDUM OPINION AND ORDER

This Order addresses the construction of several disputed claim terms pursuant to *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Plaintiff NLB Corp. ("NLB") contends that Defendant Bingham Manufacturing, Inc. ("Bingham") infringes United States Patent Nos. 7,600,700 (the '700 Patent) and its continuation 8,251,301 (the '301 Patent). Having reviewed the relevant intrinsic evidence in the record, and such extrinsic evidence as necessary, the Court construes the disputed terms and phrases as provided below.

### I. BACKGROUND OF THE INVENTIONS

The patents deal with a seal for a high pressure spraying rotating nozzle, e.g., for a power washer wand. The wand is basically a hollow tube, or housing, that delivers the fluid from the source to the nozzle. The nozzle has a hollow shaft that fits inside the housing and permits the nozzle to rotate independently of the housing. In order to force the fluid into the nozzle and not simply divert it through the gap between the nozzle shaft and the housing,

prior art placed a seal in the gap. This would serve to direct the water into the nozzle shaft; however, as the shaft rotated, the seal would experience significant friction, thus reducing the lifespan of the seal. The invention is a new seal geometry that reduces the size of the contact, or sealing, points between the housing and shaft, and thus reduces friction and increases the lifespan of the seal.

## II. CLAIM CONSTRUCTION STANDARDS

### A. Basics

Claim construction is a question of law for the Court, *see Markman*, 517 U.S. at 391, although it may involve subsidiary factual questions. *See Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 324-28 (2015). In construing the claims of a patent, the words comprising the claims "are generally given their ordinary and customary meaning" as understood by "a person of ordinary skill in the art in question at the time of the invention." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005) (en banc) (citations and internal quotation marks omitted). Accordingly, courts must determine the meaning of claim terms in light of the resources that a person with such skill would review to understand the patented technology. *See id.* at 1313 (citing *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998)).

First, "the person of ordinary skill in the art is deemed to read the claim term . . . in the context of the entire patent, including the specification." *Id.* If the specification "reveal[s] a special definition given to a claim term by the patentee that differs from the meaning it would otherwise possess . . . , the inventor's lexicography governs." *Id.* at 1316.

Likewise, if "the specification . . . reveal[s] an intentional disclaimer, or disavowal, of claim scope by the inventor . . . [,] the inventor's intention, as expressed in the specification, is regarded as dispositive." *Id.* (citation omitted). While the claims themselves provide significant guidance as to the meaning of a claim term, the specification is generally dispositive as "it is the single best guide to the meaning of a disputed term." *Id.* at 1314-15 (internal quotation marks omitted).

In addition to the specification, courts must examine the patent's prosecution history — that is, the "complete record of the proceedings before the PTO and includ[ing] the prior art cited during the examination of the patent." *Id.* at 1317 (citation omitted). "Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Id.* (citation omitted). In particular, courts must look to the prosecution history to determine "whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Id.* (citations omitted). "[W]here the patentee has unequivocally disavowed a certain meaning to obtain his patent, the doctrine of prosecution disclaimer attaches and narrows the ordinary meaning of the claim congruent with the scope of the surrender." *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003).

Finally, in addition to evidence intrinsic to the patent at issue and its prosecution history, courts may look to "extrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises.'" *Phillips*, 415 F.3d at 1317 (quoting *Markman*, 52 F.3d at 980). In

general, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.* at 1318.

When the intrinsic evidence, that is the patent specification and prosecution history, unambiguously describes the scope of a patented invention, reliance on extrinsic evidence, which is everything outside the specification and prosecution history, is improper. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996). While the Court may consult extrinsic evidence to educate itself about the invention and relevant technology, it may not rely upon extrinsic evidence to reach a claim construction that is clearly at odds with a construction mandated by the intrinsic evidence. *See Key Pharm. v. Hercon Labs. Corp.*, 161 F.3d 709, 716 (Fed. Cir. 1998).

### III. DISPUTED TERMS

#### A. The Patents Are Not Indefinite

Bingham makes the same indefiniteness argument with regard to four of the disputed terms.[1]  Bingham has the burden to show a claim is indefinite by clear and convincing evidence.  *Dow Chem. Co. v. Nova Chems. Corp. (Can.)*, 809 F.3d 1223, 1227 (Fed. Cir. 2015).  "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).  Bingham attempts to meet its burden, not with expert testimony about what a person skilled in the art could discern from that patent and its history, but rather with attorney argument.

Bingham argues that the geometry of a claimed seal depends on the geometry of the unclaimed shaft and housing.  Thus, a seal might infringe in one shaft and housing but not infringe (or even work) in another shaft and housing.  So a person of skill in the art could not look at a seal and tell if infringes or not.  Therefore, Bingham claims, the patents are indefinite.

---

[1] The four terms at issue are: (1) "received between an outer surface of a shaft and an inner surface of a housing"; (2) "outer seal point"; (3) "inner seal point"; and (4) "clearance being formed between an outer periphery of said seal and the inner surface of the housing."

ORDER -- PAGE 5

That argument fails, both as a matter of logic and law. First, the seals do not exist in isolation. They are not one-size-fits-all. Seals are designed for a particular configuration of shaft and housing, e.g., for a particular make and model of power washing wand. Even Bingham markets its allegedly infringing seals as drop-in replacements for particular NLB parts. Taken in context, i.e., in view of the dimensions of the specific shaft and housing for which the seal is intended, whether a seal infringes or not should be readily ascertainable.

A recent Federal Circuit case is instructive. *See Nevro Corp. v. Boston Sci. Corp.*, 955 F.3d 35 (Fed. Cir. 2020). The invention in *Nevro* was a spinal cord modulation system to reduce or eliminate pain, including a "means for generating a *paresthesia-free* therapy signal." *Id.* at 38 (emphasis in original). "Paresthesia" means tingling or numbness and may vary from patient to patient. It was "undisputed that 'a skilled artisan would be able to quickly determine whether a signal creates paresthesia for any given patient.'" *Id.* at 39 (quoting Joint Appendix).

> The test for indefiniteness is not whether infringement of the claim must be determined on a case-by-case basis. Instead, it is simply whether a claim "inform[s] those skilled in the art about the scope of the invention with reasonable certainty."

*Id.* (quoting *Nautilus*, 572 U.S. at 910). The *Nevro* defendant also argued that the claims were indefinite because infringement could be determined only after use of the device or method. The Circuit rejected that argument: "We do not agree. Definiteness does not require that a potential infringer be able to determine *ex ante* if a particular act infringes the claims." *Id.* at 40 (emphasis in original, citations omitted).

The Circuit thus rejected the very arguments Bingham raises here: The patents are not indefinite because infringement must be determined on a case-by-case basis after use of a seal in a specific wand.

Bingham adopts NLB's proposed construction for the first three terms[2] if the Court holds the claims are not indefinite. Accordingly, the Court adopts NLB's proposed construction. The parties have additional differences on the fourth term ("clearance") which the Court discusses below.

### B. Specific Terms

#### 1. "dimensioned"

NLB's proposed construction:

No construction necessary. Alternatively, "sized and shaped."

Bingham's proposed construction:

"Having a size and shape."

Discussion:

The Court respectfully disagree that "dimensioned" does not require construction. It is certainly possible that a juror might be unfamiliar with the term.

---

[2] (1) "received between an outer surface of a shaft and an inner surface of a housing"; (2) "outer seal point"; (3) "inner seal point"

ORDER -- PAGE 7

Bingham objects to NLB's proposal on the basis that it imports a temporal aspect into the claim. NLB's construction thus ignores the possibility that a specific seal might be used in different structures over the course of its useful life. But Bingham offers no support for its contention that the invention contemplates that a single seal should work in two differently sized structures. Moreover, "dimensioned" itself is a past tense or past participle of the verb "dimension." "Sized and shaped" thus imports no more temporal aspect than "dimensioned" itself has.

Also, "having a size and shape" is almost meaningless. Every solid object has a size and shape. Further, "having a size and shape" lacks the purposeful aspect of "dimensioned," i.e., that the object was manufactured to be a particular size and shape. Accordingly, the Court adopts "sized and shaped" as its construction of "dimensioned."

2.  ***"clearance between an outer periphery of said seal and the inner surface of the housing"***

NLB's proposed construction:

"There is no significant contact point that prevents fluid flow between an outer periphery of the seal and the inner surface of the housing."

Bingham's proposed construction:

"A gap between the surface of the seal most distant from the shaft and the surface of the housing nearest the shaft."

Discussion:

This is the most difficult claim construction issue before the Court. NLB, supported by the inventor's declaration, argues that there are three possible states: (1) sealing contact, i.e., no fluid can flow; (2) a gap, meaning no physical contact between the two surfaces and fluid can flow; and (3) nominal contact, but no sealing contact, meaning fluid can flow. *See* Herhold Decl. ¶¶ 13–15 [23-6]. Mr. Herhold's declaration avers that a person skilled in the art of fluid mechanics would understand the term "clearance" to include such nominal contact, not exclusively a gap. *Id.*

Bingham relies on a prosecution disclaimer argument. The examiner rejected the original application as identical to the prior art in Figure 2B, which showed partial clearance at the rounded edge of the seal (upper left). *See* '700 Patent 4 [23-2]. NLB argued that Figure 3B showed clearance, though quite small. To clarify, NLB submitted Figure 3C, which clearly showed physical distance between the outer surface of the seal and the inner surface of the housing along the complete length of the seal. *Id.* NLB also repeatedly referred to the "gap or clearance," treating the two words as synonyms. Accordingly, Bingham argues, NLB gave up nominal contact in the prosecution.

NLB makes no substantive response to the prosecution disclaimer argument, but rather picks some nits. *See* NLB Reply at 9-11. The Court, therefore, adopts Bingham's proposed construction of this term.

3.  *"clearance being formed between an outer periphery of said seal and the inner surface of the housing"*

NLB's proposed construction:

"There is no significant contact point that prevents fluid flow between an outer periphery of the seal and the inner surface of the housing"

Bingham's proposed construction:

Indefinite. Alternatively, "A gap that is created between the surface of the seal most distant from the shaft and the surface of the housing nearest the shaft.

Discussion:

For the same reasons given in the preceding term, the Court adopts Bingham's alternative proposed construction.

## Conclusion

The Court orders that the various patent terms are construed as indicated. The Court will by separate order establish a schedule for resolution of the remaining issues in the case.

Signed December 14, 2021.

_____
David C. Godbey
United States District Judge